UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| JAYEVON BLAINE,         Plaintiff, | : : : | |
| v. | : : | 3:20cv1039 (KAD) |
| J. BURNES (APRN), SCOTT SEMPLE (COMMISSIONER), ROLLIN COOK (COMMISSIONER), ANGELA ROBERTS (PMHNP), CORRECTIONAL MANAGED HEALTH CARE (CMHC)- UNIVERSITY OF CONNECTICUT, ERIC DOE (NURSE), KEVIN POWER (LCSW), JOHN DOE,         Defendants. | : : : : : : : : : : | |

## **INITIAL REVIEW ORDER PURSUANT TO 28 U.S.C. § 1915A**

The plaintiff, Jayevon Blaine, a sentenced prisoner[1] currently incarcerated at Cheshire Correctional Institution,[2] brings this civil rights action pursuant to 42 U.S.C. § 1983, alleging Eighth Amendment violations against former Department of Correction ("DOC") Commissioners Rollin Cook and Scott Semple, and medical/mental health providers, J. Burnes, Angela Roberts, Eric Doe, Kevin Power, John Doe, and Connecticut Manage Health Care ("CMHC"). His claims purport to span many years to include when he was housed at Garner Correctional Institution ("Garner"), MacDougall-Walker Correctional Institution ("MacDougall-Walker"), and Osborn Correctional Institution ("Osborn"). ECF No. 1. He seeks damages, a declaratory judgment, and injunctive relief against the defendants in their individual and official

---

[1] The Court may "take judicial notice of relevant matters of public record." *Giraldo v. Kessler*, 694 F.3d 161, 164 (2d Cir. 2012). The DOC website reflects that on February 21, 2014, Blaine received a fifteen-year sentence. *See* http://www.ctinmateinfo.state.ct.us/detailsupv.asp?id_inmt_num=354564.

[2] He is proceeding *pro se* and *in forma pauperis.*

1

capacities. For the following reasons, the Court will permit a claim under the Fourteenth Amendment to proceed against APRN Burnes in his individual capacity.

## STANDARD OF REVIEW

Pursuant to 28 U.S.C. § 1915A(b), the court must review prisoner civil complaints against governmental actors and "dismiss ... any portion of [a] complaint [that] is frivolous, malicious, or fails to state a claim upon which relief may be granted," or that "seeks monetary relief from a defendant who is immune from such relief." *Id.* Rule 8 of the Federal Rules of Civil Procedure requires that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).

Although detailed allegations are not required, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. A claim has facial plausibility when a plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks and citations omitted). A complaint that includes only "'labels and conclusions,' 'a formulaic recitation of the elements of a cause of action' or 'naked assertion[s]' devoid of 'further factual enhancement,'" does not meet the facial plausibility standard. *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 557 (2007)). Although courts still have an obligation to consrue "a *pro se* complaint liberally," the complaint must include sufficient factual allegations to meet the standard of facial plausibility. *See Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009) (citations omitted).

## ALLEGATIONS

In 2015, while housed at Garner, Blaine was prescribed Risperdal for his mental health conditions of impulse control disorder, ADD/ADHD, and unspecified depressive disorder. ECF No. 1 at ¶¶ 13-14. At the same time, Blaine was also taking other medications, including Benadryl, Prozac (Fluoxetine)[3] and Tenex. *Id.* at ¶ 15; ex. A. APRN Burnes provided him with the Risperdal, but never advised Blaine that it had a side effect of causing gynecomastia (the enlargement of breast tissue in males). *Id.* at ¶¶ 17-18.

In 2016, Blaine had a "sit down" talk with Burnes about his medication. *Id.* at ¶ 20. Prior to that discussion, Blaine had informed Burnes that the Risperdal made his body feel "weird." *Id.* at ¶ 22.

In 2018 while at MacDougall-Walker, Blaine noticed that he had experienced a dramatic change to his chest. *Id.* at ¶¶ 10, 24. After some research, he determined that he may have gynecomastia due to drugs provided by the mental health unit. *Id.* at ¶ 26. He visited the medical unit, but he was told to contact the mental health unit. *Id.* at ¶ 27. He was later seen by Nurse Eric Doe, who informed him that he would "put [him] in" to see the provider but that he should exercise as medication can cause weight gain. *Id.* at ¶ 29.

Thereafter, he wrote to the medical unit about his chest, but he was informed that he needed to contact the mental health unit about that issue. *Id.* at ¶ 31.

At a follow-up appointment, Nurse Eric Doe informed Blaine that the Depakote medication could cause him to gain weight but he would "put in for him" to see the provider. *Id.* at ¶ 32.

---

[3] Fluoxetine is the generic term for Prozac. See https://www.drugs.com/fluoxetine.html; https://www.webmd.com/drugs/2/drug-6997/prozac-oral/details.

3

On July 20, 2018, Blaine was seen by provider Angela Roberts, a psychiatric-mental health nurse practitioner ("PMHNP"). *Id.* at ¶ 33. After he informed her that he still had enlarged breasts even though he had stopped taking Risperdal, Roberts indicated that she would look into this issue. *Id.* at ¶ 34, ex. E. That same day, Blaine wrote a Freedom of Information Inmate Request to the medical unit seeking guidance on how to obtain medical assistance for his enlarged breast tissue. *Id.* at ¶ 35, ex. F.

Roberts later called him into the mental health unit to examine his chest. *Id.* at ¶ 36. She indicated that she felt he had gynecomastia but was not sure. *Id.*

On August 21, 2018, Blaine wrote an Inmate Request to Eric Doe about the results of bloodwork that Roberts had ordered regarding Blaine's lactic level, but he never received a response to his Request. *Id.* at ¶ 37, ex. G.

The next day, Blaine wrote an Inmate Request to the Health Services Administrator DeStefano about the problems Blaine had with the medical and mental health units at MacDougall-Walker. *Id.* at ¶ 38, ex. H. In his Inmate Request, Blaine indicated that he needed to have surgery for his enlarged breast tissue. *Id.* at ex. H. Blaine never received a response from Destefano. *Id.* at ¶ 39.

On August 28, 2018, Blaine had an appointment with Roberts, who asked how he was feeling. *Id.* at ¶ 40. Blaine explained that he still had the enlarged breast tissue and that he took showers wearing his T-Shirt in order to avoid bullying by other inmates. *Id.* at ¶¶ 41, 54.

Three weeks later, Blaine was transferred to Osborn, where he was evaluated by LCSW Kevin Power. *Id.* at ¶ 44. At that time, Blaine informed Power of his gynecomastia. *Id.* Power

4

told him that he would look into Blaine's problem or would tell the provider. *Id.* at ¶ 45. Blaine never heard back from Power or the provider. *Id.*

In June 2020,[4] Blaine had a habeas corpus hearing about his gynecomastia. At that time, UCONN's head doctor stated it was known that he had gynecomastia.[5] *Id.* at ¶ 46. At no time did Dr. John Doe, a doctor at UConn Health who oversees all medical staff in DOC for medical and mental health care, make an effort to assist with Blaine's need for medical treatment. *Id.* at ¶¶ 12, 47.

Later in the week, Blaine was sent to the medical unit and checked for gynecomastia. *Id.* at ¶ 48. Dr. Ruiz found that Blaine had glandular tissue consistent with gynecomastia. *Id.* at ¶ 49, ex. K.

Blaine claims that permitting him to take Fluoxetine and Risperdal constitutes medical deliberate indifference because mixing these drugs can cause an increase in "plasma." *Id.* at ¶¶ 50-51. He asserts that the process of seeking medical care has caused him to suffer physical and mental injury and emotional distress.[6] *Id.* at ¶¶ 52-53.

### BLAINE'S PRIOR ACTION AGAINST BURNES AND COMMISSIONERS SEMPLE AND COOK

As a preliminary matter, the Court takes judicial notice of a prior case brought by Blaine in this court against Burnes, Commissioner Semple, and Commissioner Cook (as Semple's successor), among others. *See Blaine v. Burnes*, Dkt. 3:19cv 251 (MPS). Therein, Blaine made

---

[4] Blaine does not indicate a year but Blaine references an appointment with Dr. Ruiz the following week that is reflected in a medical note signed by Dr. Ruiz on June 23, 2020. *See id.* at ¶ 49, ex. K.

[5] Although the allegation is not clear, Blaine appears to be referring to Dr. John Doe.

[6] To the extent that Blaine is alleging state law infliction of emotional distress claims, the court will not address the plausibility of such claims under Connecticut law because this initial review for purposes of 28 U.S.C. § 1915A is limited to federal law claims.

allegations against Burnes arising out of her prescription for Risperdal without advising or warning him of Risperdal's side effects. *Id.* at Complaint, ECF No. 1 at ¶ 13. Blaine also alleged that Commissioner Semple had failed to provide him proper mental health care and failed to implement procedures to ensure conformity with acceptable professional and community standards. *Id.* at ¶¶ 17, 18.

The Court construed Blaine's allegations against Burnes as a Fourteenth Amendment claim for violation of his right to receive medical information rather than an Eighth Amendment claim for deliberate indifference. *Blaine v. Burnes*, No. 3:19-CV-251 (MPS), 2019 WL 1596573, at *3 (D. Conn. Apr. 15, 2019). As the Court observed, for a Fourteenth Amendment right to medical information claim, "a prisoner must show that (1) government officials failed to provide him with such information; (2) this failure caused him to undergo medical treatment that he would have refused had he been so informed; and (3) the officials' failure was undertaken with deliberate indifference to the prisoner's right to refuse medical treatment." *Id.* (citing *Pabon v. Wright*, 459 F.3d 241, 250-51 (2d Cir. 2006)) (("in order to permit prisoners to exercise their right to refuse unwanted treatment, there exists a liberty interest in receiving such information as a reasonable patient would require in order to make an informed decision as to whether to accept or reject proposed medical treatment.").

The Court determined that Blaine had not sufficiently alleged the third requisite of deliberate indifference, to wit, that the defendant withheld information about a drug for the purpose of inducing him to accept the medication. *Id.* at *4 (citing *Pabon*, 459 F.3d at 254). The Court dismissed Blaine's Fourteenth Amendment claim as not plausible but instructed Blaine that he could "file an amended complaint to re-assert his claim against defendant Burnes if he

can allege facts showing that defendant Burnes was aware of the side-effects of Risperdal but failed to inform him of the side-effects to induce him to take the drug." *Id.*

The Court also concluded that Blaine had not stated a plausible Eighth Amendment claim against Commissioner Semple or Commissioner Cook. *Id.* at *4, 5. The court closed the case but instructed Blaine that, within 30 days, he could file a motion to reopen and file an amended complaint to allege sufficient facts in support of his Fourteenth Amendment claim against Burnes. *Id.* at *5. Blaine did not file a motion to reopen or an amended complaint in Dkt. 3:19cv 251 (MPS).

## DISCUSSION

Blaine asserts that defendants failed to provide or to take action that ensured adequate care for his serious medical needs in violation of the Eighth Amendment. *Id.* at ¶¶ 62-63.

### CMHC

As an initial matter, CMHC is a division of a state agency and not a "person" subject to suit under 42 U.S.C. § 1983. *Blaine v. UConn Health Care*, No. 3:18-CV-359 (MPS), 2018 WL 1368909, at *2 (D. Conn. Mar. 16, 2018) (citing *Will v. Michigan Dep't of State Police*, 491 U.S. 58 (1989)). All claims against CMHC are dismissed.

### Statute of Limitations[7]

The statute of limitations for tort claims set forth in Connecticut General Statutes § 52-577 applies to claims brought pursuant to section 1983. *Lounsbury v. Jeffries*, 25 F.3d 131, 134

---

[7] Although the statute of limitations is generally raised as an affirmative defense, the court may dismiss a claim where it is manifest from the allegations in the complaint that the claim is time-barred. *Walters v. Indus. And Commercial Bank of China, Ltd.*, 651 F.3d 280, 293 (2d Cir. 2011); *Reese v. Lightner*, No. 3:18cv1922 (KAD), 2019 WL 2176342, at *3 (D. Conn. May 20, 2019) (collecting cases).

(2d Cir. 1994). Section 52-577 establishes a three-year limitations period for such claims running from "the date of the act or omission complained of." Conn. Gen. Stat. § 52-577.  Although federal courts look to state law to determine the applicable statute of limitations for claims arising under section 1983, the court looks to federal law to determine when a federal claim accrues. *See Guilbert v. Gardner*, 480 F.3d 140, 149 (2d Cir. 2007) ("In a federal question case ... when a federal court determines the limitations period by applying an analogous state statute of limitations, the court nevertheless looks to federal common law to determine the time at which the plaintiff's federal claim accrues.") (citations omitted). A federal cause of action accrues "when the plaintiff knows or has a reason to know of the harm or injury that is the basis of the action." *M.D. v. Southington Bd. of Educ.*, 334 F.3d 217, 221 (2d Cir. 2003) (internal quotation marks and citation omitted).

In his prior complaint, Blaine alleges that he took Risperdal from September 8, 2015 until February 5, 2016. ECF No. 1 at ¶ 13, Dkt. 3:19cv 251 (MPS). In both the prior and pending complaints, Blaine alleges that he became aware of his enlarged breast tissue or gynecomastia in 2018. *Id.* at ¶ 14; Dkt. 20cv1039, ECF No. 1 at ¶ 19. In the instant action, he also alleges that in 2018, he became aware that the enlarged breast tissue could be a side effect of the mental health drugs he had been prescribed by the mental health unit. *Id.* Thus, for purpose of this initial review only, the Court concludes that Blaine's action stemming from his gynecomastia as a side effect of Risperdal is not barred by the statute of limitations as it accrued when he became aware in 2018 that his mental health drugs had a side effect that could cause him to develop gynecomastia.

**APRN Burnes**

Although Blaine alleges Eighth Amendment violations in the instant matter, his claim against APRN Burnes is still a Fourteenth Amendment claim for violation of his right to receive medical information about taking Risperdal and its interaction with Fluoxetine. *See Pabon*, 459 F.3d at 250-251. Here, he has alleged that that the manufacturer and pharmaceutical companies had provided all mental health and medical providers with a warning label for the Risperdal medication. ECF No. 1 at ¶ 19. He has also alleged that prior to his 2016 "sit down" conversation with Burnes, he had informed her that he no longer wanted to take Risperdal because it made his body feel weird. *Id.* at ¶ 22.

In *Pabon*, the Second Circuit concluded that Pabon's allegations—that the doctor knew of the dangerous adverse side effects of the prescription drugs, including impotence, and that the doctor knew that Pabon was participating in conjugal visits—were sufficient to raise an inference that the doctor failed to provide information about the side effects in order to induce Pabon to undergo treatment that he otherwise might have declined. *See Pabon v. Wright*, 459 F.3d 241, 254 (2d Cir. 2006).

Blaine's allegations are not as specific as those in *Pabon*. However, construed most favorably for purposes of initial review, the allegations are sufficient to raise an inference that APRN Burnes knew about Risperdal's side effects and failed to provide Blaine with that information so as to induce him to continue taking the drug after he informed her that he wanted to stop due to his concern Risperdal was making his body feel weird.[8] Thus, the Court will

---

[8] However, Blaine has not sufficiently alleged that Burnes was aware of any adverse effects related to taking Risperdal with Fluoxetine. Thus, his Fourteenth Amendment claim will proceed only on his allegations related to Burnes's failure to provide him with information about the side effects of Risperdal unless the discovery reveals that Burnes was also aware of the dangers of taking both medications and the complaint is amended accordingly.

9

permit Blaine's Fourteenth Amendment claim to proceed against Burnes for further factual development.

### Eighth Amendment Claims

The Court next considers whether Blaine has alleged plausible Eighth Amendment claims against the remaining defendants and concludes that he has not.

Deliberate indifference to serious medical needs occurs when an official knows that an inmate faces a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it. *Harrison v. Barkley*, 219 F.3d 132, 137–38 (2d Cir. 1998) (citing *Farmer v. Brennan*, 511 U.S. 825, 837 (1994)). In order to state a deliberate indifference claim, the plaintiff must allege both that his medical condition/need was serious and that the defendants acted with a sufficiently culpable state of mind. *See Smith v. Carpenter*, 316 F.3d 178, 184 (2d Cir. 2003) (citing *Estelle*, 492 U.S. at 105). Objectively, the alleged conditionmust be "sufficiently serious." *Wilson v. Seiter*, 501 U.S. 294, 298 (1991). The condition must be "one that may produce death, degeneration, or extreme pain." *See Hathaway v. Coughlin*, 99 F.3d 550, 553 (2d Cir. 1996) (internal quotation marks omitted). Factors relevant to the seriousness of a medical condition include whether "a reasonable doctor or patient would find [it] important and worthy of comment," whether the condition "significantly affects an individual's daily activities," and whether it causes "chronic and substantial pain." *Chance v. Armstrong*, 143 F.3d 698, 702 (2d Cir. 1998) (internal quotation marks and citations omitted). Moreover, "the prisoner must show that the risk of which he complains is not one that today's society chooses to tolerate." *Helling v. McKinney*, 509 U.S. 25, 36 (1993).

Subjectively, the defendants must have been actually aware of a substantial risk that the plaintiff would suffer serious harm as a result of their actions or inactions. *See Salahuddin v. Goord*, 467 F.3d 263, 280–81 (2d Cir. 2006). "[M]ere medical malpractice is not tantamount to deliberate indifference," unless "the malpractice involves culpable recklessness, i.e., a conscious disregard of a substantial risk of serious harm." *Chance*, 143 F.3d at 703.

When an inmate brings an Eighth Amendment deliberate indifference claim based on "a temporary delay or interruption" of treatment, the court's objective "serious medical need inquiry can take into account the severity of the temporary deprivation alleged by the prisoner." *Smith v. Carpenter,* 316 F.3d 178, 186 (2d Cir. 2003). The court should consider the "particular risk of harm faced by a prisoner due to the challenged deprivation of care, rather than the severity of the prisoner's underlying medical condition." *Id.* "[I]n most cases, the actual medical consequences that flow from the alleged denial of care will be highly relevant to the question of whether the denial of treatment subjected the prisoner to a significant risk of serious harm." *Id.*

Here, Blaine has not sufficiently alleged a serious medical condition that satisfies the objective component of the Eighth Amendment analysis. Blaine only alleges that his condition causes him embarrassment and leads him to shower wearing a t-shirt to avoid bullying. He has not, however, alleged that his condition or the failure to adequate treat the condition subjected him to a significant risk of harm, such as pain, physical degeneration, or interference with his ability to conduct tasks associated with daily living. *See Brock v. Wright*, 315 F.3d 158, 162-63 (2d Cir. 2003); *Washington v. Fludd*, No. 18-CV-1273(JS/SIL), 2019 WL 1643542, at *3 (E.D.N.Y. Apr. 16, 2019) (dismissing plaintiff's Eighth Amendment claim based on

gynecomastia as a Risperdal side effect for failure to state allegations sufficient to meet the objective component). Indeed, according to the Mayo Clinic, "Gynecomastia is an increase in the amount of breast gland tissue in boys or men, caused by an imbalance of the hormones estrogen and testosterone. Gynecomastia can affect one or both breasts, sometimes unevenly." https://www.mayoclinic.org/diseases-conditions/gynecomastia/symptoms-causes/syc-20351793. "Generally, gynecomastia isn't a serious problem, but it can be tough to cope with the condition. Men and boys with gynecomastia sometimes have pain in their breasts and may feel embarrassed." *Id.* "Gynecomastia may go away on its own. If it persists, medication or surgery may help." https://www.mayoclinic.org/diseases-conditions/gynecomastia/diagnosis-treatment/drc-20351799. "Most cases of gynecomastia resolve over time without treatment." *Id.* While Gynecomastia can cause pain or discomfort, and can result in discharge from the nipple, *id.,* Blaine alleges none of these infrequent side effects. *See, e.g. Ayoubi v. Dart*, 729 F. App'x 455, 459 (7th Cir. 2018) (concluding that plaintiff could satisfy objective element where there was evidence gynecomastia caused him severe pain.). Blaine's Eighth Amendment claims are dismissed for failing to satisfy the first objective component of such a claim.

Further, it is all but axiomatic that where the condition itself is not sufficiently serious, there can be no finding that the defendants were aware that he would be subjected to a substantial risk of harm as a result of their actions or inactions with respect to his treatment for the condition. And the allegations against the individual defendants do not suggest otherwise.

**Nurse Eric Doe**

Blaine complains that he did not see a provider, although Nurse Doe stated he would "put in" for Blaine to see one; that Nurse Doe only provided him with advice to work out and that

Depakote could cause weight gain; and that that he did not respond to Blaine's Inmate Request about his bloodwork tests. These allegations do not meet the standard set forth above with respect to the mens rea component of an Eighth Amendment claim. Blaine's allegations indicate only that Nurse Doe may have acted negligently in discharging his duties, which is insufficient to establish an Eighth Amendment violation. *See Warwick v. Doe*, No. 3:20-CV-227 (JAM), 2020 WL 2768804, at *6 (D. Conn. May 27, 2020) ("simple negligence of prison personnel does not constitute deliberate indifference") (citing *Salahuddin*, 467 F.3d at 279-80).

### PMHNP Roberts

Blaine's Eighth Amendment claim against PMHNP Roberts (who provided him with mental health care) is not entirely clear. The allegations (and exhibits) relevant to Roberts indicate that she provided him mental health care and ordered him a bloodwork test, but that she failed to provide him with or ensure that he received remedial treatment for his gynecomastia.

Blaine appears to assert that she should have provided him with different treatment to address his gynecomastia. However, "mere disagreement over the proper treatment does not create a constitutional claim," and "[s]o long as the treatment given is adequate, the fact that a prisoner might prefer a different treatment does not give rise to an Eighth Amendment violation." *Chance*, 143 F.3d at 703. *See also, Bolden v. Cty. of Sullivan*, 523 F. App'x 832, 833 (2d Cir. 2013) ("Indeed, we have held that a disagreement with the type of medical care provided is insufficient to state a constitutional claim; 'the essential test is one of medical necessity and not one simply of desirability.'"). Moreover, Blaine has not alleged facts suggesting that Roberts (a mental health practitioner) had the ability to ensure he was provided with the medical treatment (such as the surgery he seeks as injunctive

relief) to remedy his gynecomastia. Thus, Roberts's failure to provide him with, or to take action to ensure, that he received the remedial medical treatment is at most negligence or mere medical malpractice. *See Warwick*, No. 3:20-CV-227 (JAM), 2020 WL 2768804, at *5 (explaining that absent facts suggesting that the defendant actually had and failed to exercise the power to get plaintiff in to see a dental surgeon sooner, plaintiff's allegations amounted to at most negligence).

### Kevin Power

Blaine asserts an Eighth Amendment claim against Power, who examined him upon admission to Osborn and stated that he would look into his problem with gynecomastia. Again, even if Power was derelict in failing to take steps to secure Blaine treatment for his gynecomastia at that time, Blaine has not alleged facts suggesting that Power acted with deliberate indifference by ignoring a substantial risk of harm to Blaine. His allegations suggest at most that Power acted negligently rather than with a conscious disregard of a serious risk of harm to Blaine.

### Dr. John Doe

Blaine alleges that Dr. John Doe, who is allegedly a supervisory official within UConn Healthcare, "failed to fix" Blaine's medical issue in a timely manner. Even if Blaine's allegations may be construed to establish that Dr. John Doe was aware that Blaine had gynecomastia, Blaine has not alleged that Dr. John Doe was aware that Blaine was subjected to a substantial risk of harm due to a failure to provide him with more timely remedial treatment for his condition.

### Former Commissioners Semple and Cook

Blaine must allege facts to establish the personal involvement of a defendant in an alleged constitutional violation in order to hold that defendant liable for an award of damages

under § 1983. *See Farrell v. Burke*, 449 F.3d 470, 484 (2d Cir. 2006). Blaine has not alleged any facts concerning the conduct of former Commissioner Semple or Cook in the body of the complaint.[9]

In sum, Blaine has not plausibly alleged either component of an Eighth Amendment claim for deliberate indifference to his serious medical needs against any defendant. Those claims, whether against the defendants in their official capacities or their individual capacities are therefore dismissed.

**ORDERS**

The Court enters the following orders:

(1) The case shall proceed on Blaine's Fourteenth Amendment claim against APRN Burnes in her individual capacity. All other claims are DISMISSED.

(2) The clerk shall verify the current work address of APRN Burnes (who is alleged to have worked at Garner Correctional Institution) with the DOC Office of Legal Affairs, mail a waiver of service of process request packet containing the complaint to her at her confirmed addresses on or before **October 14, 2020**, and report on the status of the waiver request on the **thirty-fifth (35th) day** after mailing. If defendant fails to return the waiver request, the clerk shall make arrangements for in-person individual capacity service by the U.S. Marshals Service on the defendant, and the defendant shall be required to pay the costs of such service in accordance with Federal Rule of Civil Procedure 4(d).

---

[9] Moreover, Blaine cannot state plausible official capacity claims against these defendants for injunctive relief because Cook and Semple would not have the power to provide the requested relief as they no longer work for DOC. *See Ex parte Young*, 209 U.S. 123, 157 (defendant official must have some connection with enforcement of allegedly unconstitutional act). *See* https://portal.ct.gov/DOC (showing that Angel Quiros is the current Interim Commissioner).

(3) The clerk shall send a courtesy copy of the complaint and this Order to the DOC Office of Legal Affairs.

(4) The defendant shall file a response to the complaint, either an answer or motion to dismiss, within **sixty (60) days** from the date the notice of lawsuit and waiver of service of summons forms are mailed to them. If the defendant chooses to file an answer, defendant shall admit or deny the allegations and respond to the cognizable claims recited above. The defendant may also include any and all additional defenses permitted by the Federal Rules.

(5) Discovery, according to Federal Rules of Civil Procedure 26-37, shall be completed by **April 24, 2021.** Discovery requests and responses need not be filed with the Court.

(6) The parties must comply with the District of Connecticut "Standing Order Re: Initial Discovery Disclosures," which will be sent to both parties by the Court. The Order can also be found at http://ctd.uscourts.gov/administrative-standing-orders.

(7) All motions for summary judgment shall be filed by **May 24, 2021.**

(8) According to Local Civil Rule 7(a), a nonmoving party must respond to a dispositive motion within **twenty-one (21) days** of the date the motion was filed. If no response is filed, or the response is not timely, the dispositive motion can be granted absent objection.

(9) If the plaintiff changes his address at any time during the litigation of this case, Local Court Rule 83.1(c)2 provides that he MUST notify the Court. Failure to do so can result in the dismissal of the case. The plaintiff must give notice of a new address even if he is incarcerated. He should write "PLEASE NOTE MY NEW ADDRESS" on the notice. It is not enough to just put the new address on a letter without indicating that it is a new address. If the plaintiff has more than one pending case, he should indicate all of the case numbers in the notification of


change of address. He should also notify the defendant or defense counsel of his new address.

(10) The plaintiff shall utilize the Prisoner Efiling Program when filing documents with the court. The plaintiff is advised that the Program may be used only to file documents with the court. Local court rules provide that discovery requests are not filed with the court. D. Conn. L. Civ. R. 5(f). Therefore, discovery requests must be served on defendant's counsel by regular mail.

**SO ORDERED** this 23rd day of September 2020 at Bridgeport, Connecticut.

```
       /s/
       Kari A. Dooley
       United States District Judge
```