UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| JAYEVON BLAINE,<br>    Plaintiff, | :<br>:<br>: |
| v. | :      3:20cv1039 (KAD) |
| J. BURNES (APRN) et al., | :<br>: |
|     Defendants. | :<br>: |

**MEMORANDUM OF DECISION RE: MOTION FOR SUMMARY JUDGMENT**

The plaintiff, Jayevon Blaine ("Blaine"), a sentenced prisoner[1] in the custody of the Connecticut Department of Correction ("DOC") filed the instant civil rights complaint pursuant to 42 U.S.C. § 1983, alleging constitutional violations against former DOC Commissioners Rollin Cook and Scott Semple, medical mental health providers, J. Burnes, Angela Roberts, Eric Doe, Kevin Power, John Doe, and CMHC. ECF No. 1. On initial review, the Court permitted Blaine to proceed on his Fourteenth Amendment claim against Defendant Burnes premised on his right to receive medical information about the side effects of taking Risperdal. ECF No. 8 at 7-8. The Court dismissed all other claims and defendants from the action. *Id.* Thereafter, Defendant Burnes asserted several affirmative defenses, to include a release of all claims "by virtue of a settlement agreement entered on February 25, 2019 in *Jayevon Blaine v. UCONN Health Center, et al*. 3:18-cv-00359 (MPS)." ECF No. 27.   Defendant Burnes now seeks summary judgment as to this affirmative defense and asserts that Blaine's claim is barred by the

---

[1] The Court may "take judicial notice of relevant matters of public record." *Giraldo v. Kessler*, 694 F.3d 161, 164 (2d Cir. 2012). The Connecticut DOC website reflects that on February 21, 2014, Blaine received a fifteen-year sentence. *See* http://www.ctinmateinfo.state.ct.us/detailsupv.asp?id_inmt_num=354564.

1

release signed on February 25, 2019 in his prior action. ECF No. 36. Blaine filed a response to the motion for summary judgment on August 31, 2021, asserting that the Court should not grant the motion for summary judgment on the basis of the global settlement. He also repeats the facts alleged in his complaint and attaches exhibits, including, *inter alia*, a copy of the General Release and Settlement Agreement, medical records, and other documents relevant to his medical condition. ECF No. 41. For the following reasons, the motion for summary judgment is granted.

**Standard of Review**

A motion for summary judgment may be granted only where there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. Rule 56(a), Fed. R. Civ. P.; *see also Nick's Garage, Inc. v. Progressive Cas. Ins. Co.,* 875 F.3d 107, 113-14 (2d Cir. 2017). "A genuine issue of material fact exists if 'the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Nick's Garage*, 875 F.3d at 113-14 (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). Which facts are material is determined by the substantive law. *Anderson*, 477 U.S. at 248. "The same standard applies whether summary judgment is granted on the merits or on an affirmative defense...." *Giordano v. Market Am., Inc.*, 599 F.3d 87, 93 (2d Cir. 2010).

The moving party bears the initial burden of informing the court of the basis for its motion and identifying the admissible evidence it believes demonstrates the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the moving party meets this burden, the nonmoving party must set forth specific facts showing that there is a genuine issue for trial. *Wright v. Goord*, 554 F.3d 255, 266 (2d Cir. 2009). He cannot "rely on

conclusory allegations or unsubstantiated speculation but must come forward with specific evidence demonstrating the existence of a genuine dispute of material fact." *Robinson v. Concentra Health Servs.*, 781 F.3d 42, 34 (2d Cir. 2015) (quotation marks and citation omitted). To defeat a motion for summary judgment, the nonmoving party must present such evidence as would allow a jury to find in his favor. *Graham v. Long Island R.R.*, 230 F.3d 34, 38 (2d Cir. 2000).

Although the court is required to read a self-represented "party's papers liberally and interpret them to raise the strongest arguments that they suggest," *Willey v. Kirkpatrick*, 801 F.3d 51, 62 (2d Cir. 2015), "unsupported allegations do not create a material issue of fact" and do not overcome a properly supported motion for summary judgment. *Weinstock v. Columbia Univ.*, 224 F.3d 33, 41 (2d Cir. 2000).

**Facts**

The Court provides the following facts taken from the verified complaint[2] and Defendant's Local Rule 56(a)1 Statement and its supporting exhibits.[3] ECF No. 36-3 ("Def.'s Rule 56(a)"). The Court assumes familiarity with the detailed recitation of Blaine's factual

---

[2] The Court may consider the allegations of the verified complaint in reviewing the motion for summary judgment. *See Jordan v. LaFrance*, No. 3:18-CV-1541 (MPS), 2019 WL 5064692, at *1 n. 1, *4 (D. Conn. Oct. 9, 2019).
[3] Local Rule 56(a)1 provides: "Each material fact set forth in the Local Rule 56(a)1 Statement and supported by the evidence will be deemed admitted (solely for purposes of the motion) unless such fact is controverted by the Local Rule 56(a)2 Statement required to be filed and served by the opposing party in accordance with this Local Rule, or the Court sustains an objection to the fact." Defendants informed Blaine of this requirement in their Notice to *Pro Se* Litigant. (ECF No. 36-3). Because Blaine has not filed a response to Defendant's statement of facts in compliance with Local Rule 56(a)2, Defendant's Rule 56(a)1 statement of facts may be deemed admitted where supported by the evidence. *See Small v. Clements*, No. 3:18-CV-1731 (KAD), 2019 WL 5727388, at *1, n.1 (D. Conn. Nov. 5, 2019); *Wu v. Nat'l Geospatial Intel. Agency*, No. 3:14CV1603 (DJS), 2017 WL 923906, at *2 (D. Conn. Mar. 8, 2017) (noting in context of *pro se* Plaintiff's failure to submit a Local Rule 56(a)2 statement, that "*pro se* parties are not excused from abiding by the Federal Rules of Civil Procedure.") (citation omitted).

allegations which are contained in the Court's Initial Review Order but briefly summarizes those allegations relevant to his claim against Defendant Burnes. ECF No. 8.

In 2015, while he was housed at Garner Correctional Institution, Blaine was allegedly prescribed Risperdal for his mental health conditions of impulse control disorder, ADD/ADHD, and unspecified depressive disorder. Complaint, ECF No. 1 at ¶¶ 13-14. At the same time, Blaine was also allegedly taking other medications, including Benadryl, Prozac (Fluoxetine) and Tenex. *Id.* at ¶ 15; ex. A. Blaine has alleged that APRN Burnes provided him with the Risperdal, but did not advise him that it might cause gynecomastia. *Id.* at ¶¶ 17-18. During 2016, he allegedly had a "sit down" with APRN Burnes to talk about his medication and informed her that he wanted to discontinue taking Risperdal and that it made his "body feel weird." *Id.* at ¶¶ 20, 22.

In 2018 while at MacDougall-Walker, Blaine allegedly noticed that he had experienced a dramatic change to his chest. *Id.* at ¶¶ 24. He alleges that he determined through his research that he may have gynecomastia due to drugs provided by the mental health unit. *Id.* at ¶ 26.

Blaine alleges that he had a habeas corpus hearing about his gynecomastia in June 2020.[4] At that time, UCONN's head doctor stated it was known that he had gynecomastia. *Id.* at ¶ 46. Later in the week, Blaine was sent to the medical unit and checked for gynecomastia. *Id.* at ¶ 48. Dr. Ruiz found that Blaine had glandular tissue consistent with gynecomastia. *Id.* at ¶ 49, ex. K.

On initial review, the Court determined that Blaine's claim accrued, for purposes of the three-year statute of limitations[5] in 2018 when he became aware of the side effects from Risperdal, including the potential development of gynecomastia. ECF No. 8 at 7-8.

---

[4] Blaine does not indicate the year but references an appointment with Dr. Ruiz the following week that is reflected in a medical note signed by Dr. Ruiz on June 23, 2020. *See id.* at ¶ 49, ex. K.

[5] The statute of limitations for tort claims set forth in Connecticut General Statutes § 52-577 applies to claims brought pursuant to section 1983. *Lounsbury v. Jeffries*, 25 F.3d 131, 134 (2d Cir. 1994). Section 52-577

It is undisputed that prior to filing this complaint, Blaine signed a General Settlement and Release Agreement with an effective date of February 25, 2019 as part of a settlement in a separate matter captioned, *Blaine v. UConn Health Center, et al.* 3:18cv359 (MPS).[6] Def.'s Rule 56(a) at ¶ 6; Def.'s ex. A, ECF No. 36-4. At paragraph 3, the General Settlement and Release Agreement provides:

> By executing this General Release and Settlement Agreement, the Plaintiff hereby agrees to release and forever discharge the Defendants, the state of Connecticut, its employees, officers, officials, agents, or representative, of any kind, and their heirs, successors, and assignees, from all actions, causes of action, suits, claims, controversies, damages and demands of every nature and kind, including costs, attorneys' fees, and monetary and equitable relief, which the Plaintiff and his heirs, successors, and assignees ever had, now have, or hereafter can, shall, or may have for, upon, or by reason of any matter, cause, or thing whatsoever from the beginning of the world until and including the date Plaintiff signs this General Release and Settlement Agreement, including but not limited to acts arising out of, or in any way related to the incidents or circumstances which formed the basis for the above captioned lawsuit, including but not limited to such actions as may have been or in the future may be brought in the federal courts, the courts of the State of Connecticut, the courts of any other state or jurisdiction, any state or federal administrative agency, or before the Connecticut Office of the Claims Commissioner pursuant to Connecticut General Statute § 4-141 *et seq*. This General Release and Settlement Agreement includes, but is not limited to, all causes of action alleging violations of the Plaintiff's state and federal constitutional rights, his rights arising under the statutes and laws of the United States, under the statutes and law of the State of Connecticut, under the statutes and laws of any other state or jurisdiction, and causes of action available under the common law.

In consideration, the state of Connecticut agreed to pay Blaine "the total sum of eight hundred and fifty dollars and zero cents ($850.00) in full and final settlement of these and any and all other matters." *Id.* at Paragraph 2. The parties executed the agreement on February 25, 2019. *Id.*

---

establishes a three-year limitations period for such claims running from "the date of the act or omission complained of." Conn. Gen. Stat. § 52-577.

[6] This case was closed after the parties filed a stipulation of dismissal. *See* 3:18cv359 (MPS), ECF Nos. 27-28.

**Discussion**

"A settlement agreement is a binding contract that is interpreted according to general principles of contract law." *Powell v. Omnicom, BBCO/PHD*, 497 F.3d 124, 128 (2d Cir. 2007); *see Tromp v. City of N.Y.*, 465 F. App'x 50, 51 (2d Cir. 2012) (settlement agreements and releases are construed according to general principles of contract law). "[T]he interpretation of a contract is ordinarily a matter of state law to which [the federal court] defer[s]." *DIRECTV, Inc. v. Imburgia*, 577 U.S. 47, 54 (2015).

If the terms of the contract are not ambiguous, the interpretation of the contract is a question of law appropriately resolved on summary judgment. *Omni Quartz, Ltd. v. CVS Corp.*, 287 F.3d 61, 64 (2d Cir. 2002); *see Audubon Parking Assoc. Ltd. P'ship v. Barclay and Stubbs, Inc.*, 225 Conn. 804, 811, 626 A.2d 729, 733 (1993) ("A trial court has the inherent power to enforce summarily a settlement agreement as a matter of law where the terms of the agreement are clear and unambiguous."). "When only one interpretation of a contract is possible, the court need not look outside the four corners of the contract." *Konover v. Kolakowski*, 186 Conn. App. 706, 720, 200 A.3d 1177, 1186 (2018) (internal quotation marks and citation omitted). Any ambiguity in contract terms must arise from the language used in the contract, not the parties' subjective interpretation of that language. *Vance v. Tassmer*, 128 Conn. App. 101, 111, 16 A.3d 782, 789 (2011)(citation omitted). In determining whether a contract is ambiguous, the Court should "not torture words to import ambiguity where the ordinary meaning leaves no room for ambiguity." *Alstom Power, Inc. v. Balcke-Durr, Inc.*, 269 Conn. 599, 610–11 (Conn. 2004) (internal citation omitted).

!      Blaine signed the General Release and Settlement Agreement, which clearly states that he

released all state officers and officials from all claims and lawsuits which he then had or may have in the future arising out of events occurring up until the date he signed the release. *See* Def.'s ex. A, ECF No. 36-4.

The language of the release is not ambiguous and is susceptible of only one meaning. The unambiguous language of the General Release and Settlement Agreement applies to Blaine's claim in the instant action. The conduct giving rise to his cause of action occurred prior to the date of February 25, 2019. Blaine has acknowledged that he was aware of the side effects of his mental health medication well before signing this release in 2019. Notwithstanding, Blaine asserts that "the global settlement is a separate matter in Blaine v. UCONN Health Center et al." ECF No. 41 at ¶ 22. As discussed above, it clearly and unambiguously is not. And Blaine has not submitted any evidence that suggests that the General Release and Settlement Agreement should not be enforced for equitable or other reasons.

Accordingly, Blaine's claim in the instant action is barred by the release and Defendant Burnes is entitled to judgment as a matter of law. *Crocker v. Chapdelaine*, No. 3:18-CV-613 (KAD), 2019 WL 2269944, at *3 (D. Conn. May 28, 2019) (citing *Walker v. Corizon*, 764 *Walker v. Corizon*, 764 F. App'x 78 (2d Cir. Apr. 4, 2019) (upholding dismissal of case pursuant to unambiguous language in general release the *pro se* litigant had signed in another case)); *Crabtree v. Hope's Windows, Inc.,* No. 3:17-CV-01709 (VAB), 2018 WL 2436992, at *8 (D. Conn. May 30, 2018) ("Because the Settlement Agreement and Release reaches all legal actions "including, but not limited to, all claims relating to any work performed" by Bright, Mr. Crabtree's claims under § 42a (Count One) and for breach of contract (Count Two), breach of implied warranty (Count Three), and revocation and acceptance (Count Four), are foreclosed

by the parties' earlier settlement. May 17, 2010, General Release. The Court therefore dismisses these claims.").

**Conclusion**

For the foregoing reasons, Defendant's motion for summary judgment is GRANTED. The Clerk of the Court is directed to enter judgment in favor of the defendant and to close this case.

S**O ORDERED** this 15th day of November 2021 at Bridgeport, Connecticut.

                                                  ___/s/_____
                                                  Kari A. Dooley
                                                  United States District Judge